IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Joel Clay Bracken, | ) | |
| | ) | Civil Action No. 6:13-1377-TMC-KFM |
| Plaintiff, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Simmons First National Bank, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

      This matter is before the court on the defendant's motion to dismiss for failure to state a claim (doc. 67). The plaintiff, who is proceeding *pro se*, filed a complaint against the defendant bank in this court on May 21, 2013.[1] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) DSC, all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

      According to the plaintiff's complaint, on November 15, 2010, the defendant filed suit against the plaintiff in the Greenville County Court of Common Pleas to collect an alleged $2,472.59 in credit card debt. On September 6, 2011, the defendant failed to appear at a bench trial, and the case was dismissed with prejudice. On June 1, 2012, the plaintiff received his credit report and discovered that the defendant had accessed his TransUnion credit report without permission and was still reporting negatively for collection of the account with Equifax, Experian, TransUnion, and Innovis credit reporting bureaus (doc. 1, comp. p. 6). On July 5, 2012, the plaintiff faxed the defendant a letter demanding

---

[1]The plaintiff alleges violations of federal statutes, and the diversity statute is also facially satisfied given the plaintiff's allegations that the defendant is an Arkansas corporation, the plaintiff is a citizen of South Carolina, and he seeks damages exceeding $75,000. *See* 28 U.S.C. §§ 1331 (federal question statute), 1332 (diversity statute).

the defendant provide verifiable proof of a permissible purpose for the credit inquiry (*id.*; doc. 1-4, 7/5/12 letter).  According to the plaintiff, the defendant never replied and continued reporting negatively for collection of the account and also failed to report the account as disputed with the credit reporting bureaus (doc. 1, comp. p. 6).  On September 11, 2012, the plaintiff mailed a letter to the defendant stating that it was his intent to sue the defendant for the unauthorized credit inquiry (doc. 1-6).  On September 25, 2012, the plaintiff filed a complaint with the South Carolina Department of Consumer Affairs requesting "inquiry into the 'unconscionable conduct' of collecting a debt and defamation of character and of [his] credit character by [the defendant]" (doc. 1-7).  On October 10, 2012, the defendant replied to the South Carolina Department of Consumer Affairs through counsel, stating that the plaintiff opened a credit card account with the defendant on November 2, 2007, and the account was closed on October 19, 2009, after the account became delinquent.  The letter further stated that the credit card was revoked on January 8, 2010, and numerous attempts to contact the plaintiff failed.  The defendant set forth several reasons why the plaintiff's request for inquiry should be denied (*id.* at pp. 3-6).

On May 21, 2013, the plaintiff filed this action alleging that the defendant violated the Truth in Lending Act, the Federal Trade Commission Act, the South Carolina Consumer Protection Code, and the South Carolina Unfair Trade Practices Act.  On January 21, 2014, the defendant filed a motion to dismiss for failure to state a claim (doc. 67).  By order filed on January 22, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion to dismiss procedure and the possible consequences if he failed to adequately respond to the motion.  The plaintiff filed his response in opposition (doc. 71) on February 24, 2014, and the defendant filed a reply (doc. 73) on March 6, 2014.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the opposing party fails to state a claim for which relief can be granted.  Rule 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the

2

claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 569). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id*. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). When determining a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the non-moving party. *De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). In considering a Rule 12(b)(6) motion, the court may consider the complaint, any documents that are attached to it, and any documents explicitly relied on in the complaint if no party challenges their authenticity. *CACI Intern., Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (citation omitted).

A *pro se* plaintiff's pleadings are accorded liberal construction and are held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*). However, "[t]he 'special judicial solicitude' with

3

which a district court should view. . . *pro se* complaints does not transform the court into an advocate.  Only those questions which are squarely presented to a court may properly be addressed." *Weller v. Dep't of Soc. Services for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990).

### Fair Credit Billing Act

In Count I of his complaint, the plaintiff alleges that the defendant violated 15 U.S.C. § 1666 of the Truth in Lending Act ("TILA"), more commonly known as the Fair Credit Billing Act ("FCBA").  "The FCBA amended the Truth in Lending Act [ ] for the purpose of protecting the consumer against unfair and inaccurate credit billing and credit card practices." *Wilson v. Home Builders Finance, Inc.*, C.A. No. 9:11-790-CWH-BHH, 2011 WL 5024363, at *1 (D.S.C. Sept. 27 2011) (citation omitted), *adopted by* 2011 WL 5024353 (D.S.C. Oct. 20, 2011).  The FCBA lays out a specific process that a creditor must follow after receiving timely notice of an alleged billing error on an obligor's account.  In defining a "billing error," the FCBA consistently refers to items that appear "on a statement." *See* 15 U.S.C. § 1666(b)(1)-(7).  In order to trigger a creditor's obligations under the FCBA, an obligor must notify a creditor within 60 days of receiving a statement containing the alleged billing error. *Id.* § 1666(a).  When notifying a creditor in writing of the alleged billing error, an obligor must "set forth the reasons for the obligor's belief [ ] that the statement contains a billing error." *Id.* § 1666(a)(3).  If the credit card issuer receives the foregoing notice, it must acknowledge the dispute within 30 days, investigate the matter, and provide a written explanation of its decision within 90 days. *Id.*  A creditor or its agent "may not directly or indirectly threaten to report to any person adversely on the obligor's credit rating . . . and such amount may not be reported as delinquent to any third party until the creditor has met [these] requirements." 15 U.S.C. § 1666a(a).  As stated recently by a district court in Oregon:

> Sections 1666 and 1666a apply in circumstances where a credit card holder receives a credit card bill that contains unauthorized charges and notifies the credit card company in writing that certain changes are unauthorized. These sections

> might apply even when the credit card is not lost or stolen, such as when a credit card number is cloned. The protections of these particular sections are triggered when a cardholder provides written notice of specific unauthorized charges.

*Bromfield v. HSBC Bank Nevada*, No. 3:13-cv-462-SI, 2014 WL 183895, at *3 (D. Or. Jan. 13, 2014).

In his statement of facts and allegations, the plaintiff states that his claim arises as a result of the defendant impermissibly accessing his credit report and failing to remove negative reporting information after dismissal of a collections action that the defendant brought in order to collect a credit card debt (doc. 1, comp. at p. 6).  The plaintiff further alleges that after finding out that the defendant impermissibly accessed his credit report and failed to remove the negative information from his credit report, he communicated the same to the defendant (*id*. at p. 7).  Specifically, the plaintiff alleges that the defendant violated TILA and the FCBA by not acknowledging, investigating, and/or removing the negative information (*id*.).

The plaintiff's allegations against the defendant arise as a result of allegedly erroneous information appearing on his credit report and the defendant's alleged failure to respond to communications by the plaintiff regarding that information.   The plaintiff's allegations do not arise as a result of disputed charges contained on a billing statement. Because the plaintiff does not make any factual allegations of an alleged billing error appearing on a statement as required by the FCBA, the plaintiff does not state a claim upon which relief can be granted.  Accordingly, the motion to dismiss should be granted as to this cause of action.

### Federal Trade Commission Act

In Count II, the plaintiff alleges that the defendant's conduct constituted unfair and deceptive acts under 15 U.S.C. § 45, also known as the Federal Trade Commission Act ("FTCA") (doc. 1, comp. at p. 8).  The FTCA  states that the Federal Trade Commission shall issue a complaint should it have reason to believe that an entity is using any unfair method of competition or unfair trade practice. 15 U.S.C. § 45(b).  However, the act does

not provide for any scenario under which a consumer may bring a private right of action against a creditor.  Furthermore, case law is clear that "private actions to vindicate rights asserted under the Federal Trade Commission Act may not be maintained." *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 988 (1973). *See Summey v. Ford Motor Credit Co.*, 449 F.Supp 132 (D.S.C. 1976) (noting that "[i]t is well settled that there is no private, federal claim for which this court can grant relief for violations of the [FTCA]").  Accordingly, the motion to dismiss should be granted as to this cause of action.

### *South Carolina Consumer Protection Code*

In Count III, the plaintiff alleges that the defendant violated the South Carolina Consumer Protection Code ("SCCPC"), specifically S.C. Code Ann. § 37-5-108, by engaging in the following unconscionable conduct as a debt collector:

> [B]y reporting erroneously and collecting upon an invalid debt with . . . [the] credit reporting bureaus . . . ., by misrepresenting the legal status of the debt . . . , by using fraudulent, deceptive, or misleading representations in connection with fees which may be received . . . ., by causing injury to consumer's reputation and/or economic status by disclosing information affecting the consumer's reputation for creditworthiness with knowledge or reason to know that the information is false . . . , by reporting information concerning a debt known to be disputed by the consumer without disclosing that fact with . . . [the] credit reporting bureaus, by engaging in conduct with knowledge that like conduct had been restrained or enjoined by a court of law, . . . . and furnish[ing] false, inaccurate information with malice and/or willful intent to injure Plaintiff's credit reputation and continue to collect the court-settled debt unlawfully.

(Doc. 1, comp. pp. 8-9).

The SCCPC provides that the court as a matter of law may grant an injunction against a person it finds has engaged in, or is likely to engage in, unconscionable conduct in collecting a debt arising from a "*consumer credit transaction*." S.C. Code Ann. § 37-5-108(2) (emphasis added).  The SCCPC also provides that a consumer may assert a cause of action against a person found to engage in unconscionable conduct. *Id.*  If the court finds that person has engaged in unconscionable conduct, then the court may award

actual damages and assess a penalty in an amount not less than one hundred dollars and not more than one thousand dollars. *Id.*

The defendant argues that the SCCPC "specifically excludes transactions involving lenders like Simmons . . . " (doc. 67, def. m. to dismiss p. 6). This court agrees. A "consumer credit transaction" is defined as a "consumer credit sale," "consumer loan," "consumer lease," or a "consumer rental-purchase agreement." S.C. Code Ann. § 37-1-301(11).[2] A "consumer credit sale" is defined as follows:

> [A] sale of goods, services, or an interest in land in which
>
> (a) Credit is granted by a person who regularly engages as a seller in credit transactions of the same kind,
>
> (b) The buyer is a person other than an organization,
>
> (c) The goods, services, or interest in land are purchased primarily for a personal, family or household purpose,
>
> (d) Either the debt is payable in installments or a credit service charge is made, and
>
> (e) With respect to a sale of goods or services, the amount financed does not exceed twenty-five thousand dollars.

*Id.* § 37-2-104(1). However, the SCCPC states, "Unless the sale is made subject to this title by agreement (Section 37-2-601)[3], 'consumer credit sale' does not include a sale in which a seller allows the buyer to purchase goods or services pursuant to a lender credit card or similar arrangement." *See id.* § 37-2-104(2)(a). A "lender credit card" is defined as:

> [A]n open-end credit arrangement or loan agreement, other than a seller credit card, pursuant to which a lender gives a debtor the privilege of using a credit card, letter of credit, or

---

[2] The transaction between the plaintiff and defendant does not meet the definitions of "consumer loan," "consumer lease," or a "consumer rental-purchase agreement." *See* S.C. Code Ann. §§ 37-3-104 (defining "consumer loan"), 37-2-106 (defining "consumer lease"), and 37-2-701 (defining "consumer rental-purchase agreement").

[3] "The parties to a sale other than a consumer credit sale may agree in a writing signed by the parties that the sale is subject to the provisions of this title applying to consumer credit sales. If the parties so agree the sale is a consumer credit sale for the purposes of this title." *Id.* § 37-2-601. There is no such allegation here.

other credit confirmation or identification in transactions out of which debt arises:

(a) by the lender's honoring a draft or similar order for payment of money drawn or accepted by the debtor;

(b) by the lender's payment or agreement to pay the debtor's obligations; or

(c) by the lender's purchase from the obligee of the debtor's obligations.

*Id.* § 37-1-301(16).

Based upon foregoing, the SCCPC specifically excludes transactions involving lenders like the defendant from the definition of a "consumer credit sale" and thus from the definition of a "consumer credit transaction" under S.C. Code Ann. § 37-5-108(2). As alleged by the plaintiff, he used a "lender credit card" as defined by the SCCPC, which was issued by the defendant, and incurred debt on that card.  The defendant filed a state court action against the plaintiff to recover that debt, the state court action was later dismissed, but the defendant continued to access the plaintiff's credit report, continued to report negatively for collection of the account, and failed to report the account as disputed with the credit reporting bureaus.  However, as the defendant's allegedly unconscionable conduct did not  occur in the defendant's efforts to collect a debt arising from a "consumer credit transaction" as defined by the SCCPC, the plaintiff's allegations do not come within the scope of the SCCPC.

In his response[4] in opposition to the motion to dismiss (doc. 71, pl. resp. m. to dismiss p. 8 ), the plaintiff  notes that the defendant admitted in its answer that it is a debt collector as defined by the SCCPC (doc. 53, answer ¶ 27).  However, even if the defendant is a debt collector as defined by the code, the "unconscionable conduct" alleged by the plaintiff must have occurred in the effort to collect a debt arising from a "consumer credit transaction," which, as discussed above, did not occur here under the facts as alleged by

---

[4]The plaintiff does not address the defendant's arguments for dismissal of the other causes of action in his response (*see generally* doc. 71, pl. resp. m. to dismiss).

the plaintiff. *See* S.C. Code Ann. § 37-5-108(2). The plaintiff also notes that the defendant alleged in the complaint in state court that the "business transaction" between the parties "may be a consumer credit transaction as contemplated by the [SCCPC]" (doc. 71-1, def. state court comp. ¶¶ 5-6). Notwithstanding the defendant's prior statement of what the transaction "may be," the undersigned finds that, based upon the foregoing, the transaction between the parties does not fall within the purview of the SCCPC. Accordingly, this cause of action should be dismissed.

**South Carolina Unfair Trade Practices Act**

In Count IV of the complaint, the plaintiff alleges that the defendant violated the South Carolina Unfair Trade Practices Act ("SCUPTA"), specifically S.C. Code Ann. § 39-5-20, by omitting material facts from his credit report and that those omissions constituted misrepresentations and deception under the SCUPTA (doc. 1, comp. p. 9). The plaintiff further alleges that the defendant's omissions "had an adverse impact on [his] interests" for which he suffered actual damages (*id.*).

"To maintain a private right of action under SCUPTA, a plaintiff must establish: (1) the defendant engaged in an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice; and (3) the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Bessinger v. Food Lion, Inc.*, 305 F.Supp.2d 574, 578 (D.S.C. 2003) (citing *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998)). If all three requirements are not met, then the claim must be dismissed. *See Beattie v. Nations Credit Fin. Servs. Corp.*, 69 F. App'x 585, 588-89 (4th Cir. 2003) (citing *Havird*, 149 F.3d at 291).

The defendant argues that the plaintiff has failed to allege the third element of a claim under the SCUPTA. "'The act is not available to redress a private wrong where the public interest is unaffected.'" *Bessinger*, 305 F.Supp.2d at 582 (quoting *Columbia Eye Assoc. v. Bi-Lo, Inc.*, 386 S.E.2d 259, 263 (S.C. Ct. App. 1989)). Under South Carolina law, unfair or deceptive trade practices have an adverse impact on the public interest if those acts have the potential for repetition. *Haley Nursery Co. v. Forrest*, 381 S.E.2d 906,

908 (S.C. 1989) (citing *Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 351 S.E.2d 347 ( S.C. Ct. App. 1986).  "An unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is beyond the act's embrace . . . ." *Noack*, 351 S.E.2d at 349-50).

The plaintiff's complaint makes no allegations that the defendant's actions affected the public interest.  On the contrary, the plaintiff states that the defendant's actions "had an adverse impact on Plaintiff's interests" (doc. 1, comp. p. 9).  Without proof of specific facts disclosing that members of the public were adversely affected by the unfair conduct or that they were likely to be so affected, the result is a "'speculative claim of adverse public impact' and that will not suffice under the UPTA." *Jefferies v. Phillips*, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994) (quoting *Daisy Outdoor Advertising Co. v. Abbott*, 451 S.E.2d 394, 397 (S.C. Ct. App. 1994)).

Because the plaintiff fails to allege that the defendant's actions had an adverse impact on the public interest, the plaintiff's allegations do not meet the mandatory requirements of a claim under the SCUPTA.  Accordingly, the motion to dismiss should be granted as to this cause of action.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing,

IT IS RECOMMENDED that the defendant's motion to dismiss for failure to state a claim (doc. 67) be granted.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

May 6, 2014
Greenville, South Carolina

10

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).